IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JENNIFER FLETCHER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>STATE OF ALASKA, )<br>) No. 1:18-cv-0007-HRH<br>Defendant. )<br>_____) | |

O R D E R

Cross-motions for Summary Judgment

Plaintiff moves for partial summary judgment.[1] Defendant opposes this motion[2] and cross-moves for summary judgment.[3] Defendant's cross-motion is opposed.[4] Oral argument was requested and has been heard.

Facts

Plaintiff Jennifer Fletcher began working for defendant the State of Alaska in 2012 and was promoted to legislative librarian in 2014. Throughout her employment with

---

[1]Docket No. 28.

[2]Docket No. 39.

[3]Docket No. 35.

[4]Docket No. 43.

defendant, plaintiff has been enrolled in defendant's health care plan, AlaskaCare. AlaskaCare is a self-funded health care plan which is administered by Aetna Life Insurance Company. AlaskaCare "provides benefits for medical services and procedures that are medically necessary and not otherwise excluded from the Plan."[5]

Plaintiff is "transgender. While [she] was designated male at birth, [her] gender identity is female."[6] Defendant admits that "[p]laintiff presents herself and wishes others to identify her as a stereotypical 'woman'"[7] and there is no evidence that defendant ever took issue with plaintiff's female identity.

Plaintiff avers that she was diagnosed with gender dysphoria[8] in 2014 and that "[w]ith the assistance of that treating professional, [she] began the process of social, legal, and

---

[5]Answer to Interrogatory No. 6, State of Alaska's First Supplemental Responses to Plaintiff's First Set of Interrogatories at 2, Exhibit B, Declaration of Tara L. Borelli [etc.], Docket No. 32. The parties agree that a health care plan can exclude treatment that may be medically necessary. The issue here is not whether the surgery which plaintiff was denied coverage for was medically necessary but whether this denial of coverage violated plaintiff's Title VII rights because it was discrimination on the basis of sex.

[6]Declaration of Jennifer Fletcher [etc.] at 2, ¶ 6, Docket No. 29.

[7]Response to Request for Admission No. 7, State of Alaska's Responses to Plaintiff's First Set of Requests for Admission at 3, Exhibit C, Borelli Declaration, Docket No. 32.

[8]Gender dysphoria is the medical condition "characterized by incongruence between one's experienced/expressed gender and assigned sex at birth, and clinically significant distress or impairment of functioning that results." Expert Declaration of Randi C. Ettner, Ph.D. [etc.] at 6-7, ¶¶ 15-16, Docket No. 30.

medical transition to live . . . as the woman that [she has] always been."[9]  Plaintiff avers that she "started hormone therapy in 2014" but that by 2016, she "knew . . . that surgery was essential for [her] treatment and well-being."[10]  There is no dispute that gender transition-related surgery can be, and was in the case of plaintiff, medically necessary surgery.[11]

In November 2016, plaintiff contacted Aetna "regarding coverage and pre-authorization for surgical treatment for gender dysphoria."[12]  Plaintiff was told that AlaskaCare excludes coverage for gender transition-related surgery and that the Plan would continue to do so in 2017.[13]  Specifically, in 2017, AlaskaCare did not cover charges for

---

[9]Fletcher Declaration at 3, ¶ 10, Docket No. 29.

[10]Id. at 3, ¶ 12; 4, ¶ 15.

[11]Defendant has admitted "that surgical care could be medically necessary to treat gender dysphoria in certain individuals." Answer at 6, ¶ 26, Docket No. 14.

[12]Fletcher Declaration at 4, ¶ 16, Docket No. 29. Dr. Schechter, one of plaintiff's experts, avers that "while some transgender individuals do not require surgery, for many others surgery is essential and medically necessary to alleviate their gender dysphoria." Expert Declaration of Loren S. Schechter, M.D. [etc.] at 9, ¶ 22, Docket No. 31 (citation omitted).

[13]Exhibit A at 3, Fletcher Declaration, Docket No. 29. In 2016, defendant "engaged Segal Consulting to review multiple issues with the State's health plans including an analysis of potential costs associated with expanding coverage for gender dysphoria. . . ." Response to Request for Admission No. 23, State of Alaska's Responses to Plaintiff's First Set of Requests for Admissions at 8, Exhibit C, Borelli Declaration, Docket No. 32. Segal Consulting estimated that expanding coverage for gender dysphoria would result in "an annual increase in total claims of $60,000." Exhibit I at 001257, Borelli Declaration, Docket No. 32. Defendant's "Division of Retirement and Benefits discussed" the Segal "memorandum with the Commissioner's Office" but "[n]o further action was taken directly related to" the Segal memorandum. Answer to Interrogatory No. 4, State of Alaska' Responses to
(continued...)

> [a]ny treatment, drug, service or supply related to changing sex or sexual characteristics, including
>
> • Surgical procedures to alter the appearance or function of the body.
> • Hormones or hormone therapy.
> • Prosthetic devices.
> • Medical or psychological counseling.[14]

In 2018, AlaskaCare no longer excluded hormones, hormone therapy and counseling related to changing sex or sexual characteristics, but continued to exclude "[s]urgical procedures to alter the appearance or function of the body" and "[p]rosthetic devices."[15] The 2019 version of AlaskaCare contained the same exclusions as the 2018 version of the Plan.[16]

In June 2017, plaintiff "obtained gender-confirming surgery, specifically vaginoplasty and mammoplasty" in Thailand.[17] Defendant admits that "[n]either 'vaginoplasty' nor 'mammoplasty/breast reconstruction' are specifically excluded" under AlaskaCare but that

---

[13](...continued)
Plaintiff's First Set of Interrogatories at 5-6, Exhibit A, Borelli Declaration, Docket No. 32.

[14]Exhibit F at 8, Declaration of Tara L. Borelli [etc.], Docket No. 32.

[15]Exhibit G at 8, Borelli Declaration, Docket No. 32. The fact that defendant covers some treatment for gender dysphoria is largely irrelevant because "[a]n employer that offers one fringe benefit on a discriminatory basis cannot escape liability because he also offers other benefits on a nondiscriminatory basis." Ariz. Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris, 463 U.S. 1073, 1082 n.10 (1983).

[16]Exhibit H at 8, Borelli Declaration, Docket No. 32.

[17]Fletcher Declaration at 6, ¶¶ 19-20, Docket No. 29.

-4-

gender transition-related surgery, "which may encompass one or both of these procedures[,]" is.[18]

Plaintiff avers that if she "had been given access to such treatment through AlaskaCare, I would have obtained those surgical services in the United States."[19] She further avers that defendant's "denial of coverage forced [her] to pay thousands of dollars out-of-pocket, diverting funds that I would otherwise have used to continue paying off my student loans and other debt."[20]

On May 20, 2017, plaintiff filed a Title VII charge with the EEOC for sex discrimination. On March 13, 2018, the EEOC found that defendant's "categorical exclusion of gender reassignment treatment and services from its health plan results in adverse treatment of [its] employees based on sex (including gender identity), in violation of Title VII."[21] On May 17, 2018, plaintiff was advised that "conciliation in this matter was unsuccessful by the EEOC" and that she had ninety days in which "to commence a civil action[.]"[22]

---

[18]Answer to Interrogatory No. 6, State of Alaska's First Supplemental Responses to Plaintiff's First Set of Interrogatories, Exhibit B, Borelli Declaration, Docket No. 32.

[19]Fletcher Declaration at 6, ¶ 19, Docket No. 32.

[20]Id.

[21]Determination at 1, Exhibit C, Fletcher Declaration, Docket No. 29.

[22]Notice of Right to Sue Within 90 Days at 1, Exhibit D, Fletcher Declaration, Docket No. 29.

Plaintiff commenced this action on June 5, 2018. In her complaint, plaintiff asserts a Title VII claim. Plaintiff alleges that defendant has discriminated against her because of her "sex" which she alleges includes "discrimination on the basis of gender nonconformity, gender identity, transgender status, and gender transition."[23] Plaintiff seeks a declaration that defendant violated her rights under Title VII when it denied her coverage for gender transition-related surgery and "that AlaskaCare's blanket exclusion of [gender] transition-related surgical treatment on its face discriminates against transgender employees because of sex in violation of Title VII[.]"[24] Plaintiff also seeks compensatory and consequential damages.[25]

Plaintiff now moves for partial summary judgment in her favor and requests that the court "find that the blanket exclusion" for gender-transition related surgery "violates the prohibition on sex discrimination in Title VII. . . ."[26] Defendant cross-moves for summary judgment, arguing that there has been no violation of Title VII and that plaintiff's complaint should be dismissed.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact

---

[23]Complaint [etc.] at 14-15, ¶¶ 76-78, Docket No. 1.

[24]Id. at 15.

[25]Id.

[26]Plaintiff's Motion for Partial Summary Judgment at 2, Docket No. 28.

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The initial burden is on the moving party to show that there is an absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor.  Id. at 255.  "'[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'"  Arandell Corp. v. Centerpoint Energy Services, Inc., 900 F.3d 623, 628–29 (9th Cir. 2018) (quoting T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)).  "In reviewing cross-motions for summary judgment, 'each motion must be considered on its own merits.'"  Acosta v. City Nat'l Corp., 922 F.3d 880, 885 (9th Cir. 2019) (quoting Fair Housing Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001)).

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  "Health insurance and other fringe benefits are 'compensation, terms,

conditions, or privileges of employment.'" Newport News Shipbuilding and Dry Dock Co. v. E.E.O.C., 462 U.S. 669, 682 (1983) (quoting 42 U.S.C. § 2000e-2(a)(1)).

Plaintiff has asserted a disparate treatment claim under Title VII.[27] "'Disparate treatment' is the most easily understood type of discrimination." Mangold v. California Public Utilities Com'n, 67 F.3d 1470, 1474 (9th Cir. 1995). "The employer simply treats some people less favorably than others because of their race, color, religion," or sex. Id.

"A plaintiff asserting disparate treatment may prove that claim in two ways." You v. Longs Drugs Stores Calif., LLC, 937 F. Supp. 2d 1237, 1247 (D. Hawai'i 2013). The plaintiff may proceed under "the familiar McDonnell Douglas burden shifting framework for Title VII . . . claims." Surrell v. Calif. Water Service Co., 518 F.3d 1097, 1105 (9th Cir. 2008). "A plaintiff may alternatively proceed by simply producing 'direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer.'" Id. (quoting Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007)). Plaintiff has indicated that she is relying on the second alternative.[28]

"A discriminatory motive may be established by the employer's informal decisionmaking or 'a formal, facially discriminatory policy,' but 'liability depends on whether the protected trait . . . actually motivated the employer's decision.'" Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting Hazen Paper Co. v. Biggins, 507

---

[27]Plaintiff has confirmed that she has not raised a disparate impact claim. Plaintiff's Reply [etc.] at 26, Docket No. 43.

[28]Plaintiff's Motion for Partial Summary Judgment at 28, n.9, Docket No. 28.

U.S. 604, 610 (1993)). "'It is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group.'" Id. (quoting Am. Fed'n of State, Cnty., & Mun. Emps. v. Wash., 770 F.2d 1401, 1405 (9th Cir. 1985)). But, "a discriminatory motive may in some situations be inferred from reliance on 'a formal, facially discriminatory policy.'" Id. (quoting Hazen, 507 U.S. at 609–10).

Defendant argues that the denial of coverage for plaintiff's gender-transition related surgery was not motivated by plaintiff's sex. Defendant argues that no inference of a discriminatory motive can be drawn here because the policy in question, the blanket exclusion under AlaskaCare for gender transition-related surgery, is not a facially discriminatory policy, but rather a facially neutral policy. Defendant argues that the exclusion for gender transition-related surgery applies equally to both men and women. Defendant argues that "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998) (citation omitted). Here, defendant argues that there can be no dispute that AlaskaCare excludes gender transition-related surgery for all employees, regardless of their sex. In short, defendant argues that the exclusion is neutral on its face and thus plaintiff does not have a viable disparate treatment Title VII claim.

This argument fails. Here, defendant has adopted and relied upon a formal, facially discriminatory policy. Title VII "makes it unlawful 'to discriminate against any <u>individual</u> with respect to his compensation, terms, conditions, or privileges of employment, because of such <u>individual's</u> race, color, religion, sex, or national origin.'" <u>City of Los Angeles, Dep't of Water and Power v. Manhart</u>, 435 U.S. 702, 708 (1978) (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis added). "The statute's focus on the individual is unambiguous. It precludes treatment of individuals as simply components of a racial, religious, sexual, or national class." <u>Id.</u> The court's focus thus must be on how plaintiff was treated under the provisions of AlaskaCare. As to that issue, the material facts are not in dispute. Plaintiff was treated differently because of her natal sex. Under the provisions of AlaskaCare, "a natal female born without a vagina qualifies for coverage of a vaginoplasty, but not the plaintiff[] here because [her] natal sex is male." <u>Boyden v. Conlin</u>, 341 F. Supp. 3d 979, 995 (W.D. Wis. 2018). If plaintiff's natal sex were female and it was medically necessary for her to have a vaginoplasty to correct a congenital defect, coverage would have been available under AlaskaCare. But, because plaintiff's natal sex is male and she was seeking to transition to a female, coverage was not available. Plainly, defendant treated plaintiff differently in terms of health coverage because of her sex, irrespective of whether "sex" includes gender identity. AlaskaCare covers vaginoplasty and mammoplasty surgery if it reaffirms an individual's natal sex, but denies coverage for the same surgery if it diverges from an individual's natal

-10-

sex. That is discrimination because of sex and makes defendant's formal policy, as expressed in the provisions of AlaskaCare, facially discriminatory.

Contrary to defendant's contention, such a conclusion does not result in preferential treatment for transgender individuals. Rather, it results in all AlaskaCare participants being treated equally regardless of their sex. Also contrary to defendant's contention, the court is not comparing how transgender women are treated under AlaskaCare to how non-transgender women are treated. Rather, the court is comparing how natal females are treated under AlaskaCare to how natal males are treated. Such a comparison shows that natal males are treated differently than natal females when it comes to providing coverage for certain medically necessary surgeries. As the Seventh Circuit has explained, "the tried-and-true comparative method" for determining sex discrimination is "to isolate the significance of the plaintiff's sex to the employer's decision: has she described a situation in which, holding all other things constant and changing only her sex, she would have been treated the same way?" Hively v. Ivy Tech Community College of Indiana, 853 F.3d 339, 345 (7th Cir. 2017). Here, plaintiff would not have been treated the same way if her natal sex were female, rather than male.

In sum, defendant's policy of excluding coverage for medically necessary surgery such as vaginoplasty and mammoplasty for employees, such a plaintiff, whose natal sex is male while providing coverage for such medically necessary surgery for employees whose

-11-

natal sex is female is discriminatory on its face and is direct evidence of sex discrimination.[29]

Such "[d]isparate treatment is permissible under Title VII only if justified as a bona fide occupational qualification ('BFOQ'). A BFOQ is a qualification that is reasonably necessary to the normal operation or essence of an employer's business." Frank v. United Airlines, Inc., 216 F.3d 845, 853 (9th Cir. 2000). Defendant has not argued, nor could it, that there is any BFOQ for the disparate treatment at issue here. As such, plaintiff is entitled to summary judgment that defendant violated her rights under Title VII.

## Conclusion

Based on the foregoing, plaintiff's motion for partial summary judgment is granted and defendant's motion for summary judgment is denied.

DATED at Anchorage, Alaska, this 6th day of March, 2020.

/s/ H. Russel Holland
United States District Judge

---

[29]Because the court so concludes, it need not consider plaintiff's argument that the denial of coverage for her gender transition-related surgery constituted impermissible sex stereotyping as discussed in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) and Schwenk v. Hartford, 204 F.3d 1187 (9th Cir. 2000). The court also need not consider plaintiff's argument that "the exclusion discriminates based on the fact of [her] transition, which is inescapably because of sex." Plaintiff's Reply [etc.] at 4, Docket No. 43.