Eric Croft (Alaska Bar No. 9406031)
THE CROFT LAW OFFICE
738 H Street
Anchorage, AK 99501
T: 907-272-3508 | F: 907-274-0146
eric@croftlawoffice.com

Tara L. Borelli (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
730 Peachtree St. NE, Ste. 640
Atlanta, GA 30308
T: 470-225-5341 | F: 404-897-1884
tborelli@lambdalegal.org

Peter C. Renn (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
4221 Wilshire Boulevard, Ste. 280
Los Angeles, CA 90010
T: 213-382-7600 | F: 213-351-6050
prenn@lambdalegal.org

*Attorneys for Plaintiff Jennifer Fletcher*

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| Jennifer Fletcher, | Case No. 1:18-cv-00007-HRH |
|     Plaintiff, | |
| vs. | |
| State of Alaska, | |
|     Defendant. | |

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND EXPENSES**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ..................................................................................... ii

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND EXPENSES ....................... 1

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................... 2

LEGAL STANDARD ............................................................................................... 4

ARGUMENT ......................................................................................................... 5

    I.     There is No Question that Ms. Fletcher Is the Prevailing Party. ....................... 5

    II.    Plaintiff is Entitled to the Requested Attorney's Fees. ................................... 7

        A.     Plaintiff Seeks Compensation for a Reasonable Number of Hours ......... 8

        B.     The Requested Rates Are Reasonable. .................................................. 11

        C.     Summary of Requested Attorney's Fees ............................................... 16

    III.   Plaintiff Is Entitled to Reimbursement for Nontaxable Expenses. ................... 17

CONCLUSION ...................................................................................................... 17

CERTIFICATE OF LENGTH ................................................................................. 19

CERTIFICATE OF SERVICE ................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abu-Sahyun v. Palo Alto Unified Sch. Dist.*,
843 F.2d 1250 (9th Cir. 1988) ................................................................. 4

*Adams v. St. Johns Cnty. Sch. Dist., Fla.*,
-- F.3d -- (11th Cir. 2020) ..................................................................... 12

*Barjon v. Dalton*,
132 F.3d 496 (9th Cir. 1997) ................................................................. 11

*Being v. Crum*,
No. 3:19-cv-00060 (D. Alaska) .............................................................. 13

*Blum v. Stenson*,
465 U.S. 886 (1984) .............................................................................. 12

*Bostock v. Clayton Cnty., Ga.*,
140 S. Ct. 1731 (2020) .......................................................................... 15

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) ................................................................. 11

*Carbonell v. I.N.S.*,
429 F.3d 894 (9th Cir. 2005) ................................................................... 6

*Diaz v. Brewer*,
656 F.3d 1008 (9th Cir. 2011) ............................................................... 13

*Easley v. Collection Serv. of Nev.*,
910 F.3d 1286 (9th Cir. 2018) ............................................................... 10

*Farrar v. Hobby*,
506 U.S. 103 (1992) ................................................................................ 8

*Fischer v. SJB-P.D., Inc.*,
214 F.3d 1115 (9th Cir. 2000) ............................................................ 5, 6

*Fletcher v. State of Alaska*,
443 F. Supp. 3d 1024 (D. Alaska 2020) ................................................... 2

*Friend v. Kolodzieczak*,
72 F.3d 1386 (9th Cir. 1995) ................................................................... 4

*F.V. v. Barron*,
286 F. Supp. 3d 1131 (D. Idaho 2018) ............................................................ 14

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992) ........................................................................ 12

*Glacier Films (USA), Inc. v. Turchin*,
896 F.3d 1033 (9th Cir. 2018) .......................................................................... 6

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) ........................................................................ 11

*Grove v. Wells Fargo Fin. California, Inc.*,
606 F.3d 577 (9th Cir. 2010) .......................................................................... 17

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .............................................................................. 17

*Harris v. Millennium Hotel*,
330 P.3d 330 (Alaska 2014) ............................................................................ 14

*Hashimoto v. Dalton*,
118 F.3d 671 (9th Cir. 1997) ............................................................................ 7

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ......................................................................................... 8

*Jankey v. Poop Deck*,
537 F.3d 1122 (9th Cir. 2008) .......................................................................... 4

*Kadel v. Folwell*,
No. 1:19-cv-00272 (M.D.N.C.) ...................................................................... 13

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ................................................................... 13, 14

*Lawrence v. Cobert*,
No. 510-2014-00396X (E.E.O.C.)................................................................... 13

*Morales v. City of San Rafael*,
96 F.3d 359 (9th Cir. 1996) ..................................................................... 5, 8, 16

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) .......................................................................... 8

*Newman v. Piggie Park Enter., Inc.*,
390 U.S. 400 (1968) ......................................................................................... 4

*Norris v. Sysco Corp.*,
191 F.3d 1043 (9th Cir. 1999) ................................................................. 6

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986) .................................................................................. 5

*Roberts v. Clark Cnty. Sch. Dist.*,
215 F. Supp. 3d 1001 (D. Nev. 2016) ...................................................... 14

*Rosati v. Igbinoso*, 791 F.3d 1037 (9th Cir. 2015) ..................................... 14

*St. John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*,
574 F.3d 1054 (9th Cir. 2009) ................................................................... 4

*Tallman v. CPS Sec. (USA), Inc.*,
23 F. Supp. 3d 1249 (D. Nev. 2014) ........................................................ 16

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990) ............................................................ 10, 12

*Warnke-Green v. Pro-West Contractors*,
440 P.3d 283 (Alaska 2019) ..................................................................... 15

*Wilcox v. City of Reno*,
42 F.3d 550 (9th Cir. 1994) ....................................................................... 7

## Statutes

42 U.S.C. § 2000e-5 .............................................................................. 4, 17

## Rules

Fed. R. App. P. 4 ....................................................................................... 3

Fed. R. Civ. P. 54 ...................................................................................... 1

## PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND EXPENSES

Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, Plaintiff Jennifer Fletcher, by and through her undersigned counsel, moves the Court for an order awarding attorney's fees and expenses. This motion is based on the argument below; the accompanying declarations of Tara L. Borelli, Peter C. Renn, Eric Croft, Susan Orlansky, and Goriune Dudukgian; and all the pleadings and papers on file.

## INTRODUCTION

As the prevailing party in this case, Plaintiff Jennifer Fletcher is entitled to reasonable attorney's fees and expenses under Title VII of the Civil Rights Act of 1964. Ms. Fletcher brought this suit to challenge Defendant State of Alaska's discriminatory exclusion of coverage for gender-confirming surgical care from the health care coverage that employees receive as part of the compensation for their labor. After approximately two years of litigation, this Court awarded Ms. Fletcher a complete victory: it held that the State had engaged in unlawful sex discrimination and subsequently issued a judgment that enjoined the State from perpetuating this discrimination and awarded Ms. Fletcher $70,000 in compensation for her economic and non-economic damages. Because the State chose not to appeal the judgment, only the issue of fees and expenses remains.

Ms. Fletcher seeks a total of $156,882.50 in fees and $10,516.26 in expenses. Plaintiff is entitled to no less than these requested fees, which, in reality, represent only a fraction of the full amount that she would be entitled to seek under the law. The requested fees represent a conservative figure in light of the significant degree of success

ultimately achieved, the rates utilized, the specialized expertise and skill required to prosecute this case, the novelty and complexity of the issues, and the amount of time for which fees have not been sought. Full compensation for reasonable fees is essential to vindicating the paramount interests that motivated Congress to enact Title VII, which protects all individuals from unlawful discrimination on the basis of sex.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jennifer Fletcher filed this case on June 5, 2018 alleging a single cause of action against Defendant State of Alaska for unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964. *See Fletcher v. State of Alaska*, 443 F. Supp. 3d 1024, 1028 (D. Alaska 2020). As a legislative librarian for the State, Ms. Fletcher was entitled to health care coverage under the AlaskaCare Employee Health Plan, but she was denied coverage for medically necessary gender-confirming surgical care because of an exclusion in the plan carving out such care. *Id.* at 1027. As confirmed by the undisputed evidence in the record, without adequate treatment, gender dysphoria can result in debilitating depression and suicidality and strip a person of the ability to function effectively in daily life. ECF 30 ¶¶ 16, 18. Because of the State's discrimination, Ms. Fletcher was forced to dig into her own pocket to pay for her surgical care, which she obtained in 2017 by traveling out-of-country. *Fletcher*, 443 F. Supp. 3d at 1027. The State maintained its discriminatory exclusion even after the EEOC found reasonable cause on March 13, 2018 that the State had violated Title VII. *Id.* at 1028.

After engaging in significant discovery, Ms. Fletcher moved for summary

judgment on the issue of Defendant's liability under Title VII, and Defendant filed a cross-motion for summary judgment. *Id.* at 1026. After hearing oral argument, this Court granted Plaintiff's motion and denied Defendant's cross-motion, finding no genuine dispute of fact that "plaintiff is entitled to summary judgment that defendant violated her rights under Title VII." *Id.* at 1031. Specifically, it held that Defendant had "adopted and relied upon a formal, facially discriminatory policy" and that it "treated plaintiff differently in terms of health coverage because of her sex." *Id.* at 1030.

Following this Court's summary judgment order on liability, the parties filed a stipulated final judgment and order, which this Court entered on June 15, 2020. ECF 69. First, the judgment ordered Defendant to pay Ms. Fletcher $70,000 as compensation for her economic and non-economic damages plus interest. *Id.* ¶ 1. Second, the judgment enjoined the State from enforcing any categorical exclusion of gender transition-related surgical care in health coverage under the AlaskaCare Employee Health Plan or any successor plan. *Id.* ¶ 2. The injunction took immediate effect, and its benefit was not limited to Ms. Fletcher. *Id.* Notably, until that point, the State had maintained some form of exclusion on gender-confirming health care in the AlaskaCare Employee Health Plan for more than four decades, since at least 1979. ECF 14 ¶ 33 (answer).

Although the judgment preserved the right for Defendant to appeal, Defendant ultimately chose not to do so. The time to file a notice of appeal expired on July 15, 2020. *See* Fed. R. App. P. 4(a)(1)(A) (providing 30 days to appeal). As a result, the injunction ordered in the judgment has also become permanent by its own terms, because

Ms. Fletcher necessarily remains the prevailing party. ECF 69 ¶ 2. Finally, the judgment extended the time for seeking any attorney's fees and costs until 45 days after any appellate review became final. ECF 69 ¶ 3. This motion has been timely filed.

## LEGAL STANDARD

In any action under Title VII, the court is expressly authorized to award reasonable attorney's fees and costs to the prevailing party. 42 U.S.C. § 2000e-5(k). Where a party demonstrates prevailing party status, a district court's discretion to deny attorney's fees is "very narrow[]," and a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Abu-Sahyun v. Palo Alto Unified Sch. Dist.*, 843 F.2d 1250, 1252 (9th Cir. 1988) (quotes omitted); *see also St. John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1064 (9th Cir. 2009) (noting that a denial of fees based on special circumstances is "extremely rare"). The reason is because "'[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest.'" *Jankey v. Poop Deck*, 537 F.3d 1122, 1131 (9th Cir. 2008) (quoting *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 402 (1968)).

The threshold question in analyzing a motion for attorney's fees is to determine whether the party seeking fees qualifies as a prevailing party. *Friend v. Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir. 1995). In determining the amount of the award, "a court generally should begin by calculating the so-called 'lodestar' amount, arrived at by multiplying the number of hours reasonably spent in achieving the results obtained by a

reasonable hourly rate." *Id.* There is a strong presumption that the lodestar amount constitutes a reasonable fee. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000). However, a court may also make enhancements or other adjustments to the lodestar amount based on other factors to the extent they are not already subsumed within the lodestar calculation. *Id.* at 1119; *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996). Plaintiff does not seek an enhancement to the lodestar amount here provided that she is awarded the full amount of the requested fees in this motion.

## ARGUMENT

"The effective enforcement of Federal civil rights statutes depends largely on the efforts of private citizens, and unless reasonable attorney's fees could be awarded for bringing these actions, Congress found that many legitimate claims would not be redressed." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1986) (quotes omitted). That observation has particular salience for members of marginalized groups, who may face considerable difficulty attracting appropriately experienced counsel to take on their cases.

Ms. Fletcher is entitled to the requested fees because she is the prevailing party, and the reasonableness of the requested fees is supported by the lodestar calculation multiplying the hours reasonably required for this litigation by a reasonable hourly rate.

## I. There is No Question that Ms. Fletcher Is the Prevailing Party.

For purposes of attorney's fees, a prevailing party includes one who achieves a material alteration of the legal relationship between the parties that is judicially

sanctioned. *Carbonell v. I.N.S.*, 429 F.3d 894, 898 (9th Cir. 2005). That includes a party who "succeed[s] on any significant issue in litigation which achieved some of the benefit [she] sought in bringing the suit." *Id.* at 900 n.5. Here, Ms. Fletcher obtained far more than that: she obtained everything she sought by bringing suit—including a determination of liability, injunctive relief, and damages—through judicially sanctioned relief, and there is thus no question that she is the prevailing party.

First, establishing liability under Title VII can itself be a sufficient basis to make a plaintiff the prevailing party, even where a plaintiff recovers no damages and obtains no injunctive relief. *See Norris v. Sysco Corp.*, 191 F.3d 1043, 1050 (9th Cir. 1999) (affirming prevailing party status under Title VII where plaintiff proved sex was a motivating factor in failure to promote but employer proved it would not have promoted plaintiff anyway for non-discriminatory reasons). Here, this Court granted summary judgment on liability to Ms. Fletcher on her Title VII claim, ECF 60, and entered judgment in her favor, ECF 69. That alone makes her a prevailing party. *See Carbonell*, 429 F.3d at 898-99 (recognizing that a party who obtains a judgment on the merits is a classic example of a prevailing party); *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1038 (9th Cir. 2018) (liability determination sufficient for prevailing party status).

Second, "a plaintiff can be the prevailing party based exclusively on injunctive relief." *Fischer*, 214 F.3d at 1118 (holding that plaintiff was prevailing party based on required posting of nondiscrimination policy); *see also Carbonell*, 429 F.3d at 898 (recognizing that entry of consent decree affords prevailing party status). That is

particularly true where a plaintiff obtains relief that "not only benefited her personally, but also served to assist persons like her." *Hashimoto v. Dalton*, 118 F.3d 671, 678 (9th Cir. 1997); *see also Wilcox v. City of Reno*, 42 F.3d 550, 555 (9th Cir. 1994) (upholding fee award, although plaintiff only recovered $1 in damages, because of policy change achieved). Here, the judgment has now permanently enjoined the State from enforcing its exclusion, which benefits all transgender state employees in perpetuity. ECF 69. The significance of this relief cannot be overstated. As proven in the litigation, gender-confirming care can be life-saving. ECF 30 ¶¶ 16, 18.

Third, the judgment awarded Ms. Fletcher $70,000 for both economic and non-economic damages. ECF 69. This amount thus reflected compensation for not only all of the out-of-pocket medical expenses that Ms. Fletcher incurred as a result of being denied gender-confirming care, but also compensation for the emotional distress she suffered from being subjected to that unlawful discrimination. *See* Decl. of Tara Borelli ¶ 21 (noting that because Ms. Fletcher's economic damages were approximately $25,000, the damages award reflects $45,000 in compensation for non-economic damages).

In sum, Ms. Fletcher is the prevailing party because she obtained a judicial determination that the State violated Title VII, injunctive relief permanently barring enforcement of the challenged exclusion, and a damages award for both her economic and non-economic injury.

## II. Plaintiff is Entitled to the Requested Attorney's Fees.

The single most important factor in determining the reasonableness of a fee award

is "the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Where, as here, "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). For all the reasons explained above, Plaintiff did not merely nominally prevail but, rather, obtained excellent results: she achieved everything she sought by bringing this case, and she should recover no less than the requested amount of fees. Because Plaintiff has not sought a multiplier or enhancement for the lodestar amount here, the degree of success is appropriately considered in determining the reasonableness of the lodestar amount itself. *See Morales*, 96 F.3d at 364 n.9. The success obtained here, particularly in concert with the additional considerations detailed below, confirms the reasonableness of the fees sought.

### A. Plaintiff Seeks Compensation for a Reasonable Number of Hours.

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The Ninth Circuit has recognized that attorneys in contingent fee cases are not likely to spend excessive hours on a matter, because they may not recover any fees at all if they do not prevail. *Id.* ("[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees"). Plaintiff's counsel here similarly had no financial incentive to spend more time than appropriate on the case, as compensation for their time was not at all guaranteed.

Plaintiff seeks compensation for a reasonable amount of hours expended by her attorneys to achieve full success in the litigation. That includes 243.7 hours for Tara Borelli, 169.4 hours for Peter Renn, and 26.1 hours for Eric Croft. As reflected in the task-based time entries accompanying each of their declarations, these hours are justified for each of the identified tasks. Borelli Decl., Ex. B; Decl. of Peter Renn, Ex. B; Decl. of Eric Croft, Ex. B. To ensure the reasonableness of the hours claimed here, Plaintiff's counsel reviewed and approved the itemized charges for each attorney's time. Borelli Decl. ¶ 18; Renn Decl. ¶ 8; Croft Decl. ¶ 9. They exercised billing judgment in reviewing those entries, and as appropriate, discounted or eliminated any unnecessary, duplicative, and excessive time. Borelli Decl. ¶ 18; Renn Decl. ¶ 8; Croft Decl. ¶ 9. Indeed, they also discounted or eliminated some time entries for which fees could be appropriately sought. Borelli Decl. ¶ 18; Renn Decl. ¶ 8; Croft Decl. ¶ 9.

The requested hours are also reasonable in light of the scope of the litigation. This litigation has spanned more than two years, from the filing of the complaint on June 5, 2018, ECF 1, through the entry of judgment on June 15, 2020, ECF 69. During that time, the parties engaged in extensive discovery, propounding and responding to requests for production, interrogatories, and requests for admission, and met and conferred to resolve discovery disputes without court intervention. Borelli Decl. ¶ 19. Defendant produced a total of nearly 60,000 pages of responsive documents. *Id.* Plaintiff ultimately moved for summary judgment on liability, ECF 28, which was supported by two expert declarations and other significant evidence, and also opposed Defendant's cross-motion for summary

judgment, ECF 43. That motion practice resulted in this Court's March 6, 2020 order finding no genuine issue of material fact that Defendant had violated Title VII. ECF 60. Plaintiff is also entitled to fees for the time spent recovering attorneys' fees. *Easley v. Collection Serv. of Nev.*, 910 F.3d 1286, 1291-92 (9th Cir. 2018). Given the scope of work and results achieved in this case of first impression, the number of hours for which fees are sought is wholly reasonable. Decl. of Susan Orlansky ¶¶ 11-16.

Furthermore, Plaintiff has excluded the time spent by several other attorneys, law clerks, and paralegals from the hours for which fees are sought. First, Plaintiff has not sought any fees whatsoever for attorney Taylor Brown, who expended at least 100 hours on this litigation and contributed significantly to discovery and other litigation tasks. Borelli Decl. ¶ 16. That represents an enormous reduction in the total number of attorney hours for which fees are sought. Likewise, Plaintiff has not sought hours for another attorney who conducted research for and drafted portions of the summary judgment briefing. Renn Decl. ¶ 9. Second, Plaintiff has not sought fees for the time spent by a number of other attorneys who were consulted on this case or reviewed key filings. Borelli Decl. ¶ 17; Decl. of Eric Croft ¶ 9. Third, Plaintiff has not sought any fees for the multiple paralegals who worked on this case—including to finalize briefs for filing, review documents, and manage case files—nor for law clerks who assisted with legal research, even though their time is fully compensable. Borelli Decl. ¶ 17; *see United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407-08 (9th Cir. 1990).

All of these exclusions reinforce that the hours for which fees *are* sought are not

only reasonable but, in reality, a significant undercount of the actual hours required to attain the level of success achieved in this litigation.

**B.    The Requested Rates Are Reasonable.**

Calculating the lodestar amount also requires determining reasonable hourly rates. "The 'prevailing market rates in the relevant community' set the reasonable hourly rate for purposes of computing the lodestar amount." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). Although the "relevant community" is usually the forum in which the district court sits, rates outside the forum are justified if local counsel with the appropriate "degree of experience, expertise, or specialization required to handle properly the case" is unavailable. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (quotes omitted). Plaintiff's motion seeks fees that are justified based on local rates, but notes that the use of higher non-local rates would be justified here for out-of-state counsel, given the specialized nature of the litigation involving discrimination against a transgender employee in health care coverage for which appropriate in-state counsel was not available. *See* Borelli Decl. ¶¶ 4-6, 11; Croft Decl. ¶ 8; Orlansky Decl. ¶¶ 18-20. The hourly rates sought thus reflect the minimum rates that would be reasonable under the circumstances.

Requested rates are appropriate where they are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980-81 (9th Cir. 2008). Rates can be established through the declarations of the attorneys for whom fees are

sought as well as declarations from other attorneys validating prevailing market rates. *United Steelworkers of Am.*, 896 F.2d at 407; *see also Gates v. Deukmejian,* 987 F.2d 1392, 1406 (9th Cir. 1992) (looking to prevailing rates when fees are sought). As set forth below, the hourly rates sought by Plaintiff's counsel from Lambda Legal ($375 per hour for Tara Borelli and $325 per hour for Peter Renn) and Croft Law Office ($400 per hour for Eric Croft) are well within the range of market rates for attorneys with their years of practice, litigation experience, ability, and expertise.

Lambda Legal is the nation's oldest and largest legal organization committed to achieving full recognition of the civil rights of lesbian, gay, bisexual, and transgender (LGBT) people and those living with HIV through impact litigation, education, and public policy work. Borelli Decl. ¶ 3. Lambda Legal is a 501(c)(3) public interest law firm that does not charge its clients, but instead relies in part upon fees awarded by the courts to sustain its work. *Id.* Legal service and nonprofit organizations are entitled to fee awards based on reasonable market rates, no less than for-profit law firms. *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

Tara Borelli graduated from the University of California, Berkeley School of Law in 2001, and has worked full-time on civil rights cases for the LGBT community at Lambda Legal since 2006. Borelli Decl. ¶ 7. A core area of Ms. Borelli's practice involves discrimination against transgender people, and many of the cases that she has litigated have established important precedent in the area. *Id.* ¶ 5; *see, e.g., Adams v. St. Johns Cnty. Sch. Dist., Fla.*, -- F.3d -- (11th Cir. 2020) (counsel for transgender boy

seeking the right to use the boys' restroom at his high school); *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019) (counsel in challenge to ban on open military service by transgender people). Her work includes, in particular, challenging denials of access of gender-confirming health care. *See, e.g.*, *Being v. Crum*, No. 3:19-cv-00060 (D. Alaska) (counsel in putative class action challenging exclusion of gender-confirming care in Alaska's Medicaid program); *Kadel v. Folwell*, No. 1:19-cv-00272 (M.D.N.C.) (counsel for North Carolina state employees and dependents denied access to gender-confirming health care under state employee insurance plan); *Lawrence v. Rigas*, No. 510-2014-00396X (E.E.O.C.) (counsel for transgender retiree in federal sector EEO proceedings seeking non-discriminatory access to health insurance coverage under Title VII). She also has other significant experience challenging discrimination in health care coverage. *See, e.g., Diaz v. Brewer*, 656 F.3d 1008 (9th Cir. 2011) (counsel in federal class action suit that protected domestic partner health coverage for Arizona state employees after the legislature voted to strip that coverage from lesbians and gay men). Ms. Borelli has been named one of the Top 100 Lawyers in California by the *Daily Journal*, and one of the Top Women Lawyers by the *Daily Journal*. Borelli Decl. ¶ 9.

Peter Renn graduated *magna cum laude* from Harvard Law School in 2006, where he was an executive editor of the Harvard Civil Rights-Civil Liberties Law Review. Renn Decl. ¶ 3. Following law school, Mr. Renn clerked for the Honorable Lawrence Karlton in the United States District Court for the Eastern District of California. *Id.* He has worked full-time on civil rights cases for the LGBT community at Lambda Legal

since 2010. *Id.* Before joining Lambda Legal, Mr. Renn practiced at the law firm of

Munger, Tolles & Olson, where one of his practice areas was employment law. *Id.* ¶ 5.

Mr. Renn also has specialized experience regarding discrimination against transgender

people, including denial of access to gender-confirming care. *Id.* ¶ 6; *see, e.g.*, *Karnoski*,

926 F.3d at 1180 (counsel in challenge to ban on open military service by transgender

people); *Rosati v. Igbinoso*, 791 F.3d 1037, 1040 (9th Cir. 2015) (counsel on appeal for

transgender prisoner denied access to gender-confirming surgical care); *F.V. v. Barron*,

286 F. Supp. 3d 1131 (D. Idaho 2018) (counsel in challenge to denial of birth certificates

reflecting gender identity); *Roberts v. Clark Cnty. Sch. Dist.*, 215 F. Supp. 3d 1001 (D.

Nev. 2016) (*amicus* counsel in denial of restroom access for transgender employee under

Title VII). He has also successfully litigated on behalf of LGBT people in Alaska.

*Harris v. Millennium Hotel*, 330 P.3d 330 (Alaska 2014) (holding that the denial of

survivor's benefits to same-sex partner barred from marriage violated equal protection).

Mr. Renn was selected as one of the "Best LGBT Lawyers Under 40" by the National

LGBT Bar Association. Renn Decl. ¶ 3.

 Eric Croft earned his undergraduate degree from Stanford University and

graduated from Hastings College of Law in 1992. Croft Decl. ¶ 3. After graduation, he

clerked for the Honorable James Fitzgerald in the United States District Court for the

District of Alaska, and then Alaska Supreme Court Justice Allen Compton. *Id.* He has

practiced law at the Croft Law Office since 2010, focused on work-related injuries. *Id.* ¶

4. Co-counseling with Mr. Renn, he successfully represented the surviving same-sex

partner of an employee who was killed at work before the Alaska Supreme Court.
*Harris*, 330 P.3d at 330. Mr. Croft's public service includes serving in the Alaska House
of Representatives from 1997-2007, in the Anchorage Assembly from 2016-2019, and as
Anchorage municipal prosecutor from 2007-2008. Croft Decl. ¶ 6. He was also the
founder and president of Alaska Bar Review, helping to prepare future Alaska attorneys
for the bar exam. *Id.* ¶ 3. Mr. Croft has been awarded rates identical to those sought
here. *Warnke-Green v. Pro-West Contractors*, 440 P.3d 283, 292-93 (Alaska 2019)
(awarding $400/hour to Mr. Croft).

The accompanying declarations of two additional attorneys who were not counsel
in this case, Susan Orlansky and Goriune Dudukgian, confirm that the rates sought here
are in line with prevailing rates. Orlansky Decl. ¶¶ 17, 21-23; Decl. of Goriune
Dudukgian ¶¶ 8-10. Both attorneys confirm that the rates sought are reasonable,
particularly in light of expertise and skill necessary to prosecute the case, and the risk
involved. Orlansky Decl. ¶¶ 17, 20; Dudukgian ¶¶ 9-10. As Ms. Orlansky notes, "this
was not a run-of-the-mill case," and "there was no assurance Ms. Fletcher would
prevail." Orlansky Decl. ¶ 20. Plaintiff's counsel bore the risk that they would not be
compensated for their time or recoup the significant financial outlay for expert witness
fees. *Id.* Indeed, the fact that success was not assured was illustrated by Justice Alito,
who cited to this case in his *Bostock* dissent as purportedly exemplifying the "intense
battleground" regarding gender-confirming health care that he anticipated would emerge
after *Bostock*. *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1781 & n.56 (2020) (Alito,

J., dissenting).

Finally, as discussed above and as supported by the declarations of counsel, multiple factors confirm the reasonableness of the fees sought. *See Morales*, 96 F.3d at 364 n.9 (noting that the lodestar calculation should presumably take into account the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, the results obtained, and the contingent nature of the fee agreement); *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249 (D. Nev. 2014) (preclusion of other accepting work and "undesirability" of case to other counsel can support fee award). This was a complex case of first impression in this circuit. Borelli Decl. ¶¶ 14, 19. The specialized expertise of counsel with respect to discrimination against transgender people in health care access was key to achieving complete success for Ms. Fletcher and, indeed, for all transgender state employees. *Id.* ¶¶ 11-14. Plaintiff's counsel provided high-quality representation to Ms. Fletcher while incurring the risk that they would not be compensated for hundreds of hours of time, which also necessarily precluded acceptance of other cases, and thousands of dollars in litigation expenses. *Id.* ¶¶ 14; *see also* Croft Decl. ¶ 7 (noting that, despite the merit of the case, the nature of the relief requested could deter other counsel). The pool of attorneys willing to bear such risk is small, even at a national level.

### C. Summary of Requested Attorney's Fees

The chart below summarizes the attorney's fees sought, which total $156,882.50.

| Attorney | Rate | Hours | Amount |
|---|---|---|---|
| Tara Borelli | $375 | 243.7 | $91,387.50 |
| Peter Renn | $325 | 169.4 | $55,055.00 |
| Eric Croft | $400 | 26.1 | $10,440.00 |

### III.    Plaintiff Is Entitled to Reimbursement for Nontaxable Expenses.

In a separately-filed Bill of Costs, Ms. Fletcher's counsel seek their taxable costs in this case. They are also entitled to reimbursement for the nontaxable expenses incurred in this matter, in the amount of $10,516.26. *See* Borelli Decl. Ex. C (itemized list of nontaxable expense). The Ninth Circuit "repeatedly ha[s] allowed prevailing plaintiffs to recover non-taxable costs" under authorizing statutes such as Title VII. *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). Such costs are generally "awarded as part of a reasonable attorneys' fee since they are typically charged to paying clients by private attorneys." *Id.* Counsel's costs include fees for their admission to practice before this Court, expert fees, courier fees, travel expenses, and postage costs. All such costs are compensable. *See Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (finding that costs for service of documents, postage, hotel bills, meals, and messenger service are normally charged to fee-paying clients and thus recoverable as "necessary and reasonable" expenses); *see also* 42 U.S.C. § 2000e-5(k) (expressly authorizing reimbursement of "expert fees").

### CONCLUSION

For all of the reasons stated above, Plaintiff requests an order awarding

$156,882.50 in attorney's fees and $10,516.26 in expenses.  Plaintiff also reserves the right to update the amount requested based on the time reasonably necessary to prepare a reply in support of this motion.


Dated:  August 28, 2020           Respectfully submitted,

                           /s/ Peter C. Renn

Peter C. Renn (admitted *pro hac vice*)
Tara L. Borelli (admitted *pro hac vice*)
Eric Croft (Alaska Bar No. 9406031)

*Attorneys for Plaintiff Jennifer Fletcher*

## CERTIFICATE OF LENGTH

In accordance with Local Civil Rule 7.4, I hereby certify that this document does not exceed 5,700 words.

_/s/ Peter C. Renn_
Peter C. Renn (admitted _pro hac vice_)
Tara L. Borelli (admitted _pro hac vice_)
Eric Croft (Alaska Bar No. 9406031)

_Attorneys for Plaintiff Jennifer Fletcher_

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2020, I electronically filed the foregoing document and all attachments with the Clerk of the Court by using the CM/ECF system, causing a copy of the foregoing document and all attachments to be served on all counsel of record.

_/s/ Peter C. Renn_
Peter C. Renn (admitted _pro hac vice_)
Tara L. Borelli (admitted _pro hac vice_)
Eric Croft (Alaska Bar No. 9406031)

_Attorneys for Plaintiff Jennifer Fletcher_
